**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED GOVERNMENT SECURITY**
**OFFICERS OF AMERICA, et al.,**

      **Plaintiffs,**                         **Case No. 2:06-CV-537**
                                             **JUDGE GREGORY L. FROST**
                                             **Magistrate Judge Norah McCann King**

    **v.**

**AKAL SECURITY, INC.,**

      **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court for consideration of a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. # 9) filed by Defendant Akal Security's ("Akal"), a Memorandum in Opposition (Doc. # 13) filed by Plaintiffs' United Government Security Officers of America, et al.("UGSOA"), and Defendant's Reply Memorandum (Doc. # 18).  Specifically, Defendant moves to dismiss pursuant to Rule 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and/or failure to join an indispensable party.  For the reasons that follow, this Court **GRANTS** Defendant's motion.

**I. Facts**

The UGSOA is a labor union and the collective bargaining representative for certain Court Security Officers ("CSO's") employed by Akal.  Akal provides security services to industry and government and has government contracts with the United States Marshals Service ("USMS") under which it provides security services to various federal courthouses and federal buildings

throughout the United States. Local 127 represents the CSOs employed by Akal at the United States Courthouse in Columbus, Ohio. The USMS is neither a party to nor signatory of any of the Collective Bargaining Agreements ("CBA's") between UGSOA and Akal.

In 1997, the United States Judicial Conference Committee on Security and Facilities addressed concerns that CSOs should be medically and physically fit so that they may be able to perform all the duties associated with their position. In 1999, members of the Committee on Security and Facilities decided to implement a medical review system for CSOs. It retained an expert doctor and accepted the doctor's recommendations. Subsequently, the Committee approved the Office of Federal Occupational Health's implementation of the report. The Committee asked the USMS, based on the new medical standards, to create and implement a new physical for CSOs.

After the creation of the new CSO physical exam, beginning in or about 2000 and continuing thereafter, each and every current CSO is required to pass an annual USMS physical exam. If a CSO fails the exam, he or she is medically disqualified from performing services under the contract at which time the USMS issues an order to Akal directing it to remove the CSO from the contract. The USMS originally provided a process for affected CSOs to challenge a medical disqualification via Section H of its Service Contracts with the contract providers. However, that procedure was eliminated in July 2002 for CSOs who were medically disqualified by the USMS.

Akal and UGSOA have been parties to a series of CBA's since 1997. The most recent contract for Local 127 is effective from July 13, 2003 through September 30, 2006. Beginning in April 2006, the UGSOA and Akal entered into contract negotiations for the renewal of their the

current CBAs covering the CSOs. The agreement that Akal and UGSOA entered into in July 2003 contains two provisions, Article 5 and 6, that are now the subject of dispute in the current negotiations. Article 5 contains the parties' negotiated grievance procedure for resolving claimed violations, misinterpretation or misapplications of any provisions of the CBA, or any challenge of any disciplinary action taken against a Union Employee. This provision contains an explicit exception: the grievance procedure shall not be used for any action or order of removal of a CSO by the USMS or revocation of required CSO credentials by the USMS pursuant to the contract between Akal and the USMS. Article 6 provides that a CSO may only be suspended or dismissed with "just cause" and that any USMS action or order to remove a CSO from working under their contract with Akal, or revocation of a CSO's credentials by the USMS shall be deemed "just cause." Moreover, Article 6 provides that the USMS makes final decisions on such removals, and the UGSOA and the employee shall hold Akal harmless for any claims after the government has made a final determination.

During the course of the contract negotiations and continuing to date, Akal has insisted that the Articles 5 and 6 remain unchanged and has demanded that the UGSOA accept the Article as they exist. In response, UGSOA has stated that it cannot agree because of the practices of Akal as noted in the paragraphs supra, as well as due to the illegality of the provisions under applicable federal and state statues. The UGSOA and its Locals, including Local 127, advised Akal during 2006 negotiations that Akal's proposal, which kept in place Article 5 and 6, is unlawful inasmuch as it is arbitrary and would have a disparate and discriminatory impact upon bargaining unit members who may in the future have viable claims against Akal for unlawful adverse employment actions. Therefore, UGSOA argued that the proposed language is void as a matter of

law and public policy because it requires a prospective waiver of potential claims of the American with Disabilities Act, 42 U.S.C. § 12101 *et seq.*("ADA"), the Age Discrimination and Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

In reply, Akal advised the UGSOA on or about June 14, 2006 and again on or about July 12, 2006 that it would not negotiate with the UGSOA or its Locals, including Local 127, regarding Articles 5 and 6. Since then, Akal has refused to continue with the negotiating process, and has further stated that any increase in wages and benefits will be conditioned upon the UGSOA and its Locals' acceptance of these provisions as presently proposed.

As a consequence of these events, the UGSOA's Amended Complaint (Doc. # 5) seeks the following: a declaratory judgment declaring invalid and unlawful the pertinent provisions of Article 5 and 6; an injunction preventing Akal from promulgating, implementing, or taking further actions pursuant to the Articles; a judgment against Akal for its alleged "breach and abrogation" of its CBAs with UGSOA;[1] damages; and attorney's fees and costs. Plaintiffs allege that this Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because there is a case or controversy that implicates the interpretation, provisions, and applicability of the National Labor Relations Act ("NLRA"), 29 U.S.C. §151 *et seq.*; § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.*; the ADA; the ADEA; Title VII; and the Rehabilitation Act of 1973. Akal then filed a Motion to Dismiss or, in the alternative, for Summary Judgment. (Doc. # 9.) Akal's motion is now ripe for disposition.

---

[1] This Court notes and will later discuss that no presumptive truthfulness attaches to Plaintiffs' allegations in a Rule 12(b)(1) factual attack.

## II. Discussion

### A. Plaintiffs' LMRA and NLRA Claims

### 1. Rule 12(b)(1) Standard of Review Applies

Defendant moves to dismiss pursuant to Rule 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction, failure to state a claim upon which the court can grant relief, and/or failure to join an indispensable party. Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction. Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)). *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corporation of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction.")

Moreover, a Rule 12(b)(1) challenge can either facially or factually attack the basis for subject matter jurisdiction. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (stating "[a] rule 12(b)(1) motion can either attack the claim of jurisdiction on its face in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists"). In *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977), the Third Circuit elaborated on this crucial distinction:

5

> The facial attack [in comparison to a 12(b)(6) motion] does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under a 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Morever the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 891.

The Sixth Circuit has recognized this distinction and applied this standard to Rule 12(b)(1) challenges. *DLX, Inc.,* 381 F.3d at 516; *see also Rogers*, 798 F.2d at 915 (stating that "on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes").

Here, Defendant's Rule 12(b)(1) challenge is both a facial and factual attack upon this Court's subject matter jurisdiction. Therefore, this Court is not required to presume that Plaintiffs' allegations are true when deciding the factual attack. *DLX, Inc.*, 381 F.3d at 516; *see also Mortensen*, 549 F.2d at 891. Rather, this Court will properly review the facts offered by Plaintiffs to support their allegations to determine whether this Court has subject matter jurisdiction. Upon review, this Court finds that Plaintiffs have not met this burden, and therefore this Court does not have subject matter jurisdiction over Plaintiffs' LMRA or NLRA claims.

**2. Section 301 of the LMRA**

Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be

>brought in any district court of the United States having jurisdiction
>of the parties, without respect to the amount in controversy or without
>regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Thus, this provision by its terms confers federal subject matter jurisdiction over "[s]uits for violations of contracts." *Id.*  Plaintiffs argue that this Court has subject matter jurisdiction over this case because Plaintiffs have stated a valid § 301 claim under the LMRA by alleging the presence of a contract between the parties and that Defendant is in breach of this contract. Conversely, Defendant argues that Plaintiffs' alleged § 301 claim does not arise out of a breach of the currently effective CBA, but rather that Plaintiffs' claim arises solely out of the parties' existing obligations under the negotiated contract.  Defendant argues that Plaintiffs' claim seeks to change the status quo, which Defendant is attempting to preserve, by either (1) having this Court eliminate the pertinent language in Article 5 and 6 in the negotiated contract and prohibit their inclusion in negotiations for the current CBA or (2) declare the pertinent language under Article 5 and 6 void.  In sum, Defendant posits that Plaintiffs' current claims do not fall within the parameters of § 301 because Plaintiffs have plead no facts to support their allegations that Defendant has breached the CBA.  The Court finds that Defendant's argument that Plaintiffs have not stated a § 301 claim is correct.[1]

Plaintiffs allege that Defendant continues to the present date to use Article 5 and 6 to

---

[1] This Court recognizes that § 301 claims generally are limited to unexpired bargaining agreements and that there are certain circumstances when § 301 claims may arise out of an expired agreement.  *See, e.g., Litton Financial Printing Div. v. National Labor Relations Bd,* 501 U.S. 190, 206 (1991).  The CBA agreement upon which Plaintiffs base their claim expired on September 30, 2006.  This Court is willing to assume that the CBA's relevant terms continue to apply until the parties agree to replace it.  This Court notes, however, that whether the current CBA applies is immaterial to this Court's analysis because this Court finds no facts to support Plaintiffs' allegations that they have stated a valid § 301 claim.

justify its refusal to provide information to Plaintiffs regarding adverse employment actions taken against bargaining unit members at the alleged direction of the USMS. Moreover, Plaintiffs allege that Defendant is avoiding and ignoring grievances and arbitrations filed by Plaintiffs and its bargaining unit members concerning adverse employment actions, including suspensions without pay and terminations that Defendant has, without verification, represented were taken at the behest and/or direction of the USMS. Plaintiffs further claim that Defendant is adopting and implementing, often times at the alleged direction of the USMS, without notice and bargaining over the same, unilateral modifications of the terms and conditions of employment, and has also adopted forms that require its employees to make an acknowledgment that could prejudice their rights and ability to challenge any adverse actions taken against them by Defendant and/or the USMS as a condition of continued employment. UGSOA also alleges that continued inclusion of Article 5 and 6 would require Plaintiff to breach its statutory duty of fair representation under the LMRA.

  Defendant is correct when arguing that the mere fact Plaintiffs have characterized its allegations as breaches of contract is not despositive of the issue. (Doc. # 18.) A party cannot circumvent jurisdictional requirements by crafted pleading. *See Clayton v. Gold Bond Bldg. Prods.*, 679 F. Supp. 637, 639 (E.D. Mich. 1987). In *Clayton*, the court emphasized that in a Rule 12(b)(1) context a court's focus must be "on the *conduct* which allegedly gives rise to Plaintiffs' claims, as opposed to the descriptive title given to a particular cause of action.*" Id.* Moreover, with respect to Defendant's factual challenge to subject matter jurisdiction, this Court does not have to presume that Plaintiffs' allegations are true. *DLX, Inc. v. Kentucky*, 381 F.3d at 516; *see also Mortensen*, 549 F.2d at 891. Rather, this Court is permitted to weigh the evidence,

determine whether the facts support Plaintiffs' allegations, and consequently decide whether this Court has subject matter jurisdiction over Plaintiffs' claims.

In light of the facts presented, this Court finds that Plaintiffs have pleaded no factual allegations to support their contention that Defendant has modified any terms of the recently expired CBA agreement, or that Defendant has implemented any new policy in breach of any provision of the CBA. Moreover, the LMRA and the NLRA imposes Plaintiffs' duty of fair representation and the actual terms of the contract between the parties. Although Plaintiffs assert that Defendant has subjected its members to disparate conditions of work and/or has created a disparate impact by altering CSO's work hours and overtime compensation, requiring employees to pay for their own medical testing, and adopting forms that might prejudice their member's rights, they fail to plead facts showing that (1) these actions constitute a breach of any particular provision of the CBA, and (2) that they have attempted to resolve these issues (pay, hours, and required forms) at arbitration.

### 3. Plaintiffs' Claim under the NLRA is Preempted

Because this Court has found that Plaintiffs have failed to state a valid § 301 claim that would have exempted their claim from preemption, this Court must now consider whether Plaintiffs claims under the NLRA are preempted.

When the conduct alleged is actually or arguably protected or prohibited under Sections 7 or 8 of NLRA, the claims are preempted. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244-45 (1959). A finding of preemption precludes not only a state court but also a federal court from adjudicating Plaintiffs' claims. *Id*. at 244-45. Rather, the court must defer "to the exclusive competence of the National Labor Relations Board." *Id.* at 245. Thus, *Garmon*

9

preemption requires that the NLRB be granted exclusive jurisdiction to review in the first instance whether an unfair labor practice has been committed. *Id.* at 244. The Supreme Court of the United States has emphasized the exclusivity of the NLRB's jurisdiction in this area. *Int'l Longshoremen's Assoc. v. Davis*, 476 U.S. 380, 397 (1986). The Court stated that "in enacting the NLRA, Congress intended for the Board generally to exercise exclusive jurisdiction " *Id.* at 391. The Court then held that "a court first must decide whether there is an arguable case for pre-emption; if there is, it must defer to the Board, and only if the Board decides that the conduct is not protected or prohibited may the court entertain litigation." *Id.* at 397 (interpreting *Garmon*, 359 U.S. at 244-45).

In the present case, Plaintiffs state in their Amended Complaint (Doc. # 5 ¶ 6) that the alleged case or controversy between the parties "implicates the interpretation, provisions and applicability" of the NLRA.[2] Specifically, Plaintiffs' allegations amount to claimed violations of Section 8(a)(5) of the NLRA. Section 8(a)(5) makes it an "unfair labor practice" for an employer "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of Section 159(a)." 29 U.S.C. § 158(a)(5). The NLRA also provides that "collective bargaining between an employer and an elected representative of its employees should cover pay, wages, hours of employment, or other conditions of employment." Here, Plaintiffs allege that Defendant has adopted and implemented "often times at the alleged direction of the USMS, without notice and bargaining over the same, unilateral modifications of the terms and conditions

---

[2] Plaintiffs also allege that other federal statutes serve as a basis for this Court's jurisdiction. (Doc. # 5 ¶ 6.) However, this Court has already held that Plaintiffs have not stated a valid claim under § 301 of LMRA, and this Court will later discuss in a Rule 12(b)(6) context why Plaintiffs at the present time fail to state a valid claim upon which the Court can grant relief under the ADA, the ADEA, Title VII, or the Rehabilitation Act of 1973. Therefore, in this part of the analysis, this Court will address only whether it has jurisdiction over Plaintiffs' NLRA claim.

of employment" and that "[Defendant] refuses to engage in good faith negotiations with [Plaintiffs] over these provisions" *Id.* ¶ 27.  Thus, this Court finds that the conduct alleged in Plaintiffs' NLRA claim clearly falls within what is "actually or arguably protected or prohibited under Sections 7 or 8 of NLRA." *Int'l Longshoremen's Assoc.*, 476 U.S. at 397 (interpreting *Garmon*, 359 U.S. at 244-45); *Garmon*, 359 U.S. at 244-45.  Therefore, Plaintiffs' NLRA claim is preempted, and this Court does not have subject matter jurisdiction over it.  *Id.*

### B. Plaintiffs' Claims under the ADA, the ADEA, Title VII and the Rehabilitation Act of 1973

#### 1. Rule 12(b)(6) Standard of Review

Defendant also moves for dismissal of Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12(b)(6).  Dismissal is warranted under this rule "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).  Therefore, the focus is not on whether a plaintiff will ultimately prevail but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)).  A court considering a motion to dismiss under Rule 12(b)(6) for lack of standing "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir. 1998)).  A court need not, however, accept

11

conclusions of law or unwarranted inferences of fact.  *Perry v. American Tobacco Co., Inc.*, 324 F.3d  845, 848 (6th Cir. 2003).

### 2. Discussion

This Court recognizes that the NLRB has exclusive jurisdiction to review in the first instance whether an unfair labor practice under Section 7 or 8 of the NLRA has been committed and that "only if the Board decides that the conduct is not protected or prohibited may the court entertain litigation." *Int'l Longshoremen's Assoc.,*  476 U.S. at 397 (interpreting  *Garmon*, 359 U.S. at 244-45).  Indeed, the NLRB exercised jurisdiction over Plaintiffs' challenges regarding the legality of the proposals in the current CBA under the NLRA and dismissed them.[3]  *See* NLRB Determination, Sept. 29, 2006.  (Doc. # 18 at 5.)  This Court properly defers to the NLRB's resolution of the labor dispute that Article 5 and 6 are not "illegal" subjects of bargaining.  *Int'l Longshoremen's Assoc.,*  476 U.S. at 397 (interpreting  *Garmon*, 359 U.S. at 244-45).  However, this Court emphasizes that the NLRB decision in no way preempts an individual CSO from bringing suit against Defendant after he or she is terminated for failing the medical examination.

In *Wise v. Akal Security, Inc.,* the court granted the plaintiff's motion to dismiss defendant Akal's counterclaim.  No. Civ. A. SA04CA1142XR, 2005 WL 3487741 (W.D. Tex. Dec 21,

---

[3]     This Court recognizes that if Plaintiffs in the present case had stated a valid § 301 claim, the Sixth Circuit has held that federal courts should decline to exercise jurisdiction over § 301claims when Plaintiffs have also filed a simultaneous unfair labor practice charge regarding the same issues with the NLRB.  *Int'l Bd. of Boilermakers, Local 152 v. Olympic Plating Indus. Inc.*, 870 F.2d 1085, 1089 (6th Cir. 1989).  However, because this Court has held that Plaintiffs have not stated a valid § 301 claim, it does not need to address (1) whether it has supplemental jurisdiction over Plaintiffs non- § 301 claims, and (2) whether it must now defer to the pending NLRB claim.

2005). In *Wise*, Akal also hired the plaintiff to work as a CSO. *Id.* at *1.[4] Subsequently, the USMS advised Akal that the plaintiff was medically disqualified because of his diabetic condition and that Akal was required to remove the him from his CSO position. *Id.* Thereafter, Akal discharged the plaintiff, and the plaintiff brought a lawsuit alleging that Akal had violated the ADA and that the Attorney General had violated the Rehabilitation Act of 1973. *Id.* The plaintiff argued that Akal's conduct in discharging the plaintiff constituted discrimination on the basis of a disability or perceived disability. *Id.* Akal asserted a counterclaim referencing the same CBA that is at dispute in the present case. *Id.* at *1-2. Akal asserted that the plaintiff had breached Article 6 of the CBA by filing suit and sought a declaration that the plaintiff was precluded from bringing suit. *Id.* at *2.

In response, the court stated that Akal's "attempt to use section 6 of the CBA as a shield is misplaced." *Id.* Specifically, the court referred to the relevant sections and implementing regulations of the ADA that persuaded it to dismiss Akal's counterclaim. *Id.* First, 42 U.S.C. § 12112(a) provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.*

The court concluded that the plaintiff had properly asserted her ADA claim against Akal because the term discriminate as used in subsection (a) includes "participating in a contractual relationship or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this

---

[4] The named plaintiff in this case is Peggy Knapp Wise. However, "plaintiff" in this court's analysis refers to Gilberto Wise, who presumably has died, and now his spouse brings suit on his behalf.

subchapter." *Id.* Moreover, 29 CFR Pt. 1630.6 states, in part that "an employer or other covered entity may not do through a contractual or other relationship what it is prohibited from doing directly." The court acknowledged that Akal was in a bind in that the USMS would not allow the plaintiff to work and Akal cannot maintain an individual on a payroll who is not employable. *Id.*

More importantly, the court emphasized that even if Akal discharged plaintiff pursuant to Article 6 of the CBA, "Akal cannot wrest itself out of its predicament in manner that is suggests." *Id*. The court rejected Akal's attempt to read Article 6 as a waiver of an employee's right to assert his statutory rights. *Id*. It held that "Akal is prohibited from relying upon the physician retained by the USMS and its contractual arrangements with both the USMS and Union to avoid its ADA obligations." *Id.* Thus, the *Wise* court adapted the Sixth Circuit's reasoning that "employers do not escape their legal obligations under the ADA by contracting out certain hiring and personal functions to third parties." *Holiday v. City of Chattanooga*, 206 F.3d 637, 645 (6th Cir. 2000) (citing 42 U.S.C. § 12112(b)(2) and *EEOC v. Texas Bus Lines*, 923 F. Supp. 965, 973 (S.D. Tex. 1996)). The court also emphasized that in Section 1.8 of the CBA, Akal committed itself not to discriminate against an employee because of his or her disability. *Id* at *2. After stating that "a party including an illegal provision in a collective bargaining agreement or other contractual agreement bears the risk that the provision will be struck down," the court then concluded that pertinent provisions that contained "waivers or releases that waive prospective Title VII/ADA/ADEA rights are invalid as violative of public policy." *Wise*, 2005 WL 3487741 at *2; *see Fairs v. Williams WPC-I, Inc*., 332 F.3d 316, 321 (5th Cir. 2003).

Thus, this Court acknowledges that it has the power to adjudicate the validity of the CBA between the parties and potentially declare Article 5 and 6 of the CBA invalid as a matter of

14

public policy. *Wise*, 2005 WL 3487741, at *2; *Fairs*, 332 F.3d at 321; *see Holiday*, 206 F.3d at 645. However, this Court's power to adjudicate the contract's validity is predicated on a factual situation such as *Wise* where a plaintiff has a ripe claim and thus standing to bring suit. *Wise*, 2005 WL 3487741, at *1-2. The crucial factual distinction between *Wise* and the present case is that Plaintiffs in their Amended Complaint (Doc. # 5) have not given specific names of CSO's who the USMS has actually terminated or upon whom has imposed an adverse employment action and consequently cannot currently exercise their right to a remedy under federal law pursuant to the ADA, ADEA and/or Title VII. As held by the NLRB, the words of the contract alone, from a bargaining perspective, are not illegal. However, the NLRB holding does not imply that Defendant may escape his legal obligations under the ADEA, ADA and/or Title VII by contracting out certain hiring and personal functions to third parties. *See Holiday v. City of Chattanooga*, 206 F.3d 637, 645 (6th Cir. 2000) (citing 42 U.S.C. § 12112(b)(2) and *EEOC v. Texas Bus Lines*, 923 F. Supp. 965, 973 (S.D. Tex. 1996). Nevertheless, accepting all factual allegations as true, Plaintiffs in this case, unlike *Wise*, do not present a ripe ADEA/ADA and/or Title VII claim that provides them with standing to bring suit.

However, if an individual plaintiff were to return to this court after having been terminated or having suffered an adverse employment action, and therefore would have been deprived of his or her right to a federal remedy under the ADA, the ADEA and/or Title VII, that plaintiff would have a ripe claim, standing to bring suit, and this Court would have proper jurisdiction. 28 U.S.C. § 1331; *see Wise*, 2005 WL 3487741, at *2; *Fairs*, 332 F.3d at 321; *see Holiday*, 206 F.3d at 645. Moreover, in such an event, the current case law would persuade this Court to hold that the pertinent provisions of Article 5 and 6 of the CBA between the parties to

15

the extent they waive or release federal statutory remedies are invalid as matter of public policy.

## Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss.[5] (Doc. # 9.)  The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

   /s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

---

[5] This Court finds that Defendant's motion to dismiss under Rule 12(b)(7) based on a failure to join an indispensable party is now moot.